**MATTEL, INC., Plaintiff,**

v.

**Susanne PITT, Defendant.**

**No. 01 CIV. 1864(LTS).**

United States District Court,
S.D. New York.

Nov. 4, 2002.

---

**123.** Tr. 302–03, 438, 640.

**124.** Tr. 357, 508.

**125.** Tr. 167–68, 185, 198–99.

Perkins & Dunnegan, By William Dunnegan, Annemarie Crosswell, New York, NY, for Plaintiff.

Ms. Susanne Pitt, United Kingdom, Defendant Pro Se.

## OPINION AND ORDER

SWAIN, District Judge.

This matter comes before the Court on the motion of plaintiff Mattel, Inc. ("Plaintiff") for an order granting it summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff brings this action under the Copyright Act, 17 U.S.C. § 101 *et seq.*, alleging that Defendant Susanne Pitt ("Defendant") infringed Plaintiff's "SuperStar Barbie" copyright. Plaintiff seeks a permanent injunction restraining Defendant from further acts of infringement of Plaintiff's copyrighted work, $10,000.00 in statutory damages pursuant to 17 U.S.C. § 504(c), and attorney's fees and costs incurred as a result of the action in the amount of $1,350.00. The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.

The Court has considered thoroughly all submissions related to Plaintiff's motion. For the following reasons, Plaintiff's motion for summary judgment is denied.

## BACKGROUND

### Undisputed Facts

Plaintiff has proffered evidence of the following facts, which are undisputed. Plaintiff is the registered owner of the copyright in the work "SuperStar Barbie," U.S. Copyright registration number GP 121682. The work is an unadorned doll's head sculpture. Defendant, a resident of the United Kingdom, prepared and sold a "Dungeon Doll" to one of Plaintiff's representatives in New York. The doll, which appears to be a repainted and recostumed Barbie doll with the SuperStar Barbie head,[1] was ordered and delivered through the post. As of September 28, 2001, Defendant maintained an internet website, <www.dungeondolls.com>, which featured images of the recostumed and painted SuperStar Barbie doll in a sexually explicit story and offered various sexual paraphernalia for sale.

### Procedural History

The complaint in this action was filed with the Court on March 2, 2001. On March 14, 2001, the Court issued a preliminary pretrial order, setting a pre-trial conference for June 22, 2001 and directing the parties to communicate with each other and prepare a joint submission in advance of the conference. The office of the Clerk of the Court served the Summons and Complaint upon Defendant in the United Kingdom by registered mail. In a letter

---

1. Neither the complaint nor any of Defendant's pro se communications addresses the origin of the body of the "Dungeon Doll" at issue here.

to the Court dated March 29, 2001, Defendant represented, *inter alia,* that she had ceased to offer "dolls or related merchandising" after Mattel had complained in the preceding year, but that a "Customizing Service for dolls at private request only" was still being offered, by way of "modifi[cation] of an existing product to that persons (sic) taste and wishes and ... not [as] an attempt to infringe any Copyright." She further characterized her work as "legitimate freedom of artistic expression" and asserted that no representation as to the sources of the products was made, nor any labeling made of the modified products. By Order dated April 27, 2001, the Court directed that the letter be docketed as an answer to the complaint and instructed Defendant to serve it on Plaintiff, retain legal representation if possible, and in any event participate in a scheduled pretrial conference if she wished to defend the case.

Ms. Pitt neither attended the conference in person nor made arrangements to do so by telephone. Rather, shortly before the scheduled conference the Court received another letter, accompanied by a "Statement replacing proposed telephone conference" ("Def.'s June Statement"), in which Defendant asserted that Barbie is the subject of frequent parody and satire, that Mattel does not distinguish in its enforcement efforts "between social commentary and commercial exploitation," and reiterated her assertion that she had "desisted from publicly offering reworked dolls as 'Dungeon Dolls' and offering other merchandise as soon as Mattel complained." She also asserted that Barbie's origins can be traced to a German "adult" cartoon and doll called "Lilli" and that Defendant's website is offered free of charge, "as entertainment in the same free spirit as the original creator." The letter, which was docketed at the direction of the Court, was accompanied by various photographs of "Barbie" and "Lilli" dolls, as well as "Lilli" cartoons.

Plaintiff filed the instant motion for summary judgment on July 17, 2001. In addition to its notice of motion, exhibits and memorandum of law, Plaintiff's motion papers included the "Notice to Pro Se Litigant Opposing Summary Judgment Motion" that is required by Local Civil Rule 56.2 of this Court. The Court received no papers in opposition to the motion and, on August 28, 2001, Plaintiff's counsel wrote to request that the motion be deemed submitted, and asserted that Defendant had refused an attempted re-delivery of the motion papers. On September 3, 2001, Defendant sent an email to Plaintiff's counsel in response to the August 28th letter in which she claimed to have no idea what Plaintiff's counsel was referring to. On September 28, 2001, the Court received a letter from Defendant indicating that she considered her "answer"as a response to any submission by Plaintiff. By Order dated October 1, 2001 and sent to the parties by regular mail as well as to Defendant by e-mail, the Court reiterated the text of Local Civil Rule 56.2 and gave Defendant until October 19, 2001 to respond to the summary judgment motion.

On October 2, 2001, the Court received an email from Defendant indicating that the "dungeondolls" website was closing down due to Defendant's financial difficulties and that she considered the matter closed. The Court then issued an Order requiring any response or further submission by Plaintiff with respect to its summary judgment motion be filed by October 31, 2001. The Court has heard nothing further from Defendant.

## DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to in-

terrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The trial court must view the record in the light most favorable to the non-moving party and resolve all uncertainties and draw all reasonable inferences against the moving party. *Hill v. Taconic Dev. Disabilities Services Office,* 181 F.Supp.2d 303, 316 (S.D.N.Y.2002) (citation omitted). The role of the court is not to "weigh the evidence and determine the truth of the matter but to determine if there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is genuinely disputed only if, based on that fact, a jury could reasonably find in favor of the non-moving party. *Id.* at 248, 106 S.Ct. 2505. The moving party carries the initial burden of showing that there is no genuine issue of fact. *Matsushita Elec. Indus., Co. v. Zenith Radio Co.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When the moving party meets this burden, the burden of production shifts to the non-moving party. *Id.* at 586, 106 S.Ct. 1348. Fed.R.Civ.P. 56 provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e); *see also Champion v. Artuz,* 76 F.3d 483, 485 (2d Cir.1996) (quoting *Graham v. Lewinski,* 848 F.2d 342–43 (2d Cir.1988)) (summary judgment

appropriate when non-moving party does not respond as provided in Rule 56(c)). Where the adverse party fails to respond, the district court still must assess whether summary judgment is appropriate. *See Amaker v. Foley, C.O.,* 274 F.3d 677, 681 (2d Cir.2001).

To succeed on a claim of copyright infringement, Plaintiff must demonstrate that there is "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Cantor v. NYP Holdings, Inc.,* 51 F.Supp.2d 309, 311 (S.D.N.Y.1999) (internal quotation marks and citation omitted). To determine the latter, courts usually look at two factors: (1) whether actual copying occurred; and (2) if there exists a " 'substantial similarity' between the protected expressions of the copyrighted works and the corresponding aspects of the alleged infringing work." *Mattel, Inc. v. Radio City Entm't,* No. 00 Civ. 6272, 2002 WL 1300265, at *1 (S.D.N.Y. June 12, 2002) (quoting *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,* 166 F.3d 65, 70 (2d Cir.1999)); *see also Cantor,* 51 F.Supp.2d at 312.

The evidence offered by Plaintiff in support of its motion demonstrates that Plaintiff owns a registered (presumptively valid) copyright for its work entitled "SuperStar Barbie" (the unadorned doll's head). *(See* Pl.'s U.S. Copyright Registration No. GP 121682, Ex. A to Pl.'s Notice of Mot.) The Motion is further supported by an invoice for $186.00 for the purchase of Plaintiff's copyrighted work repainted and recostumed as a "Dungeon Doll" (10/28/2000 Dungeon Doll Invoice, Ex. E to Pl.'s Notice of Mot.; Robinson Decl. ¶ 3), a photograph of the purchased doll (Photograph, Ex. D to Pl.'s Notice of Mot.; Robinson Decl. ¶ 4), and a print-out of images of modified dolls on Defendant's website as it appeared on September 28, 2000 (Ex. C to

Pl.'s Notice of Motion; McShane Decl. ¶ 4). Plaintiff's counsel also displayed the purchased Dungeon Doll at a conference in connection with this case. The Court assumes for purposes of this analysis that repainting and/or recostuming of an individual copyrighted item can be characterized as copying or as otherwise violative of the copyright holder's protected rights in the work.

Construing liberally the submissions of the pro se Defendant, the Court finds that, in the statements about artistic expression and parody in Defendant's June Statement and the documentary evidence attached to it, Defendant raised the affirmative defense of fair use, provided for by the Copyright Act of 1976. *See* 17 U.S.C.A. § 107(a)-(d) (West 1995). Also, and significantly, in her September 3, 2001 letter Defendant cites to *Mattel, Inc. v. Walking Mountain Productions,* 2001 WL 929923 (C.D.Cal.2001). That case, a copyright infringement action brought by Mattel, Inc., concerned the work of an artist, one Forsythe, who displayed photographs, some sexually suggestive, of Barbie dolls positioned with various kitchen appliances. The court granted the defendant's motion for summary judgment. International news coverage attributed Forsythe's victory to the premise that his work was intended as parody or criticism. *See, e.g.,* Sarah Tippit, "L.A. judge rules artist can parody Barbie in artwork" (visited October 22, 2002) <http://www.thestandard.com/wire/0,2231,23269,00.html> (August 13, 2001 Reuters piece reporting that District Judge Lew found that Forsythe's "free speech rights" outweighed Mattel's "intellectual property rights," and that Mattel had not proven that Forsythe's creations had caused market confusion.); "Artist wins Barbie doll fight," (visited October 22, 2002) <http://news.bbc.co.uk/2/hi/entertainment/1492417.stm> (BBC News article dated August 15, 2001 reporting that "U.S. district judge ruled that because the images were intended as parody they did not infringe copyright … of the doll.").

The Copyright Act of 1976 provides in relevant part that "the fair use of a copyrighted work … for purposes such as criticism, comment, news reporting, teaching … scholarship, or research, is not an infringement of copyright." 17 U.S.C.A. § 107 (West 1995). § 107 lists four discretionary, non-exclusive factors to be considered in evaluating a fair use defense:

(a) The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(b) The nature of the copyrighted work;

(c) The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(d) The effect of the use upon the potential market for or value of the copyrighted work.

*Id.* The Court will address each factor in turn.

*The Purpose and Character of the "Dungeon Dolls"*

*Transformative Character of the Dungeon Dolls*

As the Supreme Court explained in *Campbell v. Acuff–Rose Music, Inc.,* 510 U.S. 569, 579, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994), the purpose and character factor in a fair use inquiry in effect asks "to what extent the new work is transformative" and not merely a "supplanting" of the original. This factor is so important to a fair use inquiry that "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Id.* The transformative character of Defendant's Dungeon Dolls is evi-

denced by both the costume and anatomy of the dolls, as well as the context in which the doll images appear. Borrowing from Defendant's own description of the Dungeon Doll purchased by Plaintiff's counsel will suffice to indicate that the Dungeon Doll costume is quite different from that typically appearing on Mattel's products for children: " 'Lederhosen-style' bavarian bondage dress and helmet in rubber with PVC-mask and waspie." (Certificate of Authenticity, Ex. E to Robinson Decl., annexed to Pl.'s Notice of Motion.) The alterations made to typical Barbie doll anatomy can be observed in the images of Dungeon Dolls printed from the dungeon-doll website and annexed to Plaintiff's Notice of Motion as Exhibit C.

The images of Plaintiff's recostumed copyrighted work that appeared on Defendant's website were presented in a photographic storyboard. "Lily the Diva Dominatrix," a recostumed and apparently physically altered Barbie doll, was the protagonist in a tale of sexual slavery and torture, the victim of which was another reconfigured Barbie. *See* Exhibit C to Pl.'s Notice of Motion. Defendant also sold numerous "adult" products that were described on the website. *See id.* Defendant's "touch-ups" of the dolls plus the setting she creates for them transform, to put it mildly, the original doll to an extent beyond merely "supplanting" it. A different analysis would apply if Defendant had, for example, dressed Barbie dolls in a different style of cheerleader outfit than those marketed by Mattel. To the Court's knowledge, there is no Mattel line of "S & M" Barbie.

*The Purpose of Defendant's Use of the Copyrighted Work*

■ In *Campbell,* addressing whether parody can constitute fair use, the Su-

preme Court concluded that "parody has an obvious claim to transformative value ... [providing] social benefit by shedding light on an earlier work, and, in the process, creating a new one." *Id.* Only borrowing that has "critical bearing on the substance and style of the original," however, can qualify as parody for the purposes of the copyright law. *Id.* at 580, 114 S.Ct. 1164. Parody must at least in part comment on the parodied work in particular, and not solely consist of general social criticism. *Id.; see also Leibovitz v. Paramount Pictures Corp.,* 948 F.Supp. 1214, 1220–21 (S.D.N.Y.1996).

Defendant asserts that she intended her "customising service" to "ressurect" (sic) the original idea of the female figure she claims inspired Barbie: a German "adult cartoon" character called "Lilli" of "easy virtue..[d]efinitely not a childrens [sic] toy." (Def.'s June Statement at 2.) As a result of Barbie's origins, Defendant argues, "sex is inherent in the doll ...." and that she is simply revealing this sexual nature by placing Barbie in a "modern erotic context." *Id.* at 2–3.

■ The accuracy of Defendant's Barbie genealogy and the question of whether or not the dungeon of a German castle is a "modern erotic context" are not material to Defendant's ability to characterize her work as a comment or parody.[2] Defendant asserts that she is at least in part attempting to comment on what she perceives as the sexual nature of Barbie through her use of customized Barbie figurines in sadomasochistic costume and/or storylines. The patently transformative character of the accused works and Defendant's representations concerning their

---

2. Nor is the question of whether the Dungeon Dolls are in good taste relevant. The "threshold question when fair use is raised in defense of parody is whether a parodic character may reasonable be perceived." *Campbell,* 510 U.S. at 582, 114 S.Ct. 1164.

purpose support sufficiently the fair use defense to weigh against plaintiff on the current record.

### The Nature of the Copyrighted Work

■ The second fair use factor recognizes that "some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell,* 510 U.S. at 586, 114 S.Ct. 1164. Greater protection should exist for works that represent creative expression as opposed to, for instance, factual compilation. *See Feist Publications v. Rural Telephone Service Company, Inc.,* 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358. There is no dispute here that Barbie is a creative work "close to the core" of copyright protection. In a critical comment or parody analysis, however, this factor, even if weighing in favor of plaintiff, assumes less importance than the other three factors. *See Leibovitz,* 948 F.Supp. at 1223.

### The Amount and Substantiality of the Portion Used in Relation to the Copyrighted Work as a Whole

■ In examining the third fair use factor, a court turns its attention to the "persuasiveness of a parodist's justification for the particular copying done," an examination that will necessarily relate to the first fair use factor, because the "extent of permissible copying varies with the purpose and character of the use." *Campbell,* 510 U.S. at 587, 114 S.Ct. 1164. This factor also overlaps with the fourth factor, "which examines the degree to which the second work usurps the market for the copyrighted work." *Leibovitz,* 948 F.Supp. at 1224. "[A] work composed primarily of an original, particularly its heart, with very little added or charged, is more likely to be a merely superseding use,

fulfilling demand for the original." *Campbell,* 510 U.S. at 587–88, 114 S.Ct. 1164.

In *Leibovitz,* photographer Annie Leibovitz brought an infringement action against Paramount Pictures because of an advertisement for the film *Naked Gun 33½ : The Final Insult* that displayed a picture of a pregnant, naked model with a backdrop similar to that used in Leibovitz's famous photograph of Demi Moore and one significant addition: Leslie Nielsen's face inserted over the face of the model. Paramount argued that its ad was a parody of the Moore photograph and thus a § 107 fair use. The court acknowledged that the Nielsen ad "closely mimicked the pose, lighting, backdrop, body configuration, and skin tone that appeared in the original." *Id.* at 1225. Because the ad "took no more of the Moore photograph than was necessary to conjure it up in the eyes of the viewer . . .," and because the ad "added something distinctly new for humorous commentary," the court found that the degree of copying in the ad supported a finding of fair use. *Id.*

■ Defendant's dolls present a variation of the *Leibovitz* fact pattern in that Defendant used actual Barbie dolls (or at least actual Barbie heads) in her creations as opposed to dolls resembling Barbie but slightly altered. Defendant here used the entire copyrighted work—the unadorned doll's head—but changed substantially the decoration of the head and body of the doll. Defendant's customizing appears to have evoked the image of Barbie while transforming the Barbie doll sufficiently that the quality and quantity of her copying weigh against judgment as a matter of law in favor of Plaintiff. As the *Campbell* opinion explains, the third fair use factor acts as a link between the first and fourth factors to screen out works that lack transformative character or threaten to serve as a market substitute for the

original work. It does so by determining the extent to which identical material was used (the quantitative inquiry) and by asking if the copying went to the "heart" or the "essence" of the original (the qualitative inquiry). *See Campbell*, 510 U.S. at 587–88, 114 S.Ct. 1164. Parodies complicate that analysis because their effectiveness depends on the degree to which they are able to "conjure up" the original. *Id.* at 588, 114 S.Ct. 1164. Thus, the legitimacy of the degree to which a parody copies an original will be determined by the extent to which the copy's "overriding purpose and character is to parody the original or, in contrast, the likelihood that the parody may serve as a market substitute for the original." *Id.*

It appears that there is slim to no likelihood that Dungeon Dolls would serve as a market substitute for Barbie dolls. The extent to which the context and character of the Dungeon Dolls transformed the unadorned Barbie head weighs against Plaintiff on the current record.

*The Effect of the Use Upon the Potential Market for or Value of the Copyrighted Work*

■ As noted above, the fourth fair use factor is related to the first and third factors. In examining how and why a defendant copied an original work, the Court inevitably must look to the degree of commercial motivation and the possibility of market harm caused by the copy. In *Campbell*, the Supreme Court rejected as error a court's presumption of market harm because the intended use of the copy was for commercial gain. *See Campbell*, 510 U.S. at 590–91, 114 S.Ct. 1164. Instead, and especially when confronted with a parody, a court must determine the likelihood of the copy acting as a market substitute for the original: does the copy affect the market for the original product by usurping demand for it? *See id.* at 591–92, 114 S.Ct. 1164. In the case of parody, it is unlikely that the copy will affect demand for the original at all, much less "supplant" it. Furthermore, reduced demand caused by a parody's criticism of the original "does not produce a harm cognizable under the Copyright Act." *Id.* at 592, 114 S.Ct. 1164.

■ Considering the market for derivative uses of an original complicates further the analysis. In *Campbell*, for example, holders of the copyright in the song "Oh, Pretty Woman," claimed that 2 Live Crew's rap parody of the song infringed their copyright. Conceivably, rap is a derivative use of a rock song. The Court explained, however, that "the market for potential derivative uses includes only those that creators of original works would in general develop or license others to develop . . . the law recognizes no derivative market for critical works, including parody. . . ." *Id.* at 592, 114 S.Ct. 1164. Of course, as in the *Campbell* case, a copy could be a parody and still affect a protected derivative market. In such a case, the inquiry would focus on the nature of the harm, if any, to the derivative market; and, as discussed above, only the harm of market substitution would be relevant. *See id.* at 593, 114 S.Ct. 1164.

■ On the current record, such an inquiry appears to weigh against a finding of infringement. Even if the Court were to find the element of parody less significant than either the commercial or the erotic element of Defendant's dolls, the dolls do not appear to pose any danger of usurping demand for Barbie dolls in the children's toys market. The sale or display of "adult" dolls does not appear to be a use Mattel would likely develop or license others to develop.

■ Defendant's assertions and the evidence of record raise sufficiently the ques-

tion of whether or not the Dungeon Dolls constitute a fair use of the copyrighted work to preclude the Court from finding as a matter of law on this summary judgment motion that Defendant infringed Plaintiff's copyright.[3] Accordingly, Plaintiff's motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied. A pre-trial conference will be held on December 16, 2002 at 3:30 p.m.

SO ORDERED.

---

**3.** Plaintiff cites to only one case, *On Davis v. The Gap, Inc.*, 246 F.3d 152 (2nd Cir.2001), for its assertion that there is no support for a finding of fair use. (*See* Memorandum of Plaintiff in Support of Its Motion for Summary Judgment ("Pl.'s Memorandum") at 4.) *On Davis* is readily distinguished on its facts. The copying involved in that case was not at all transformative and the defendant did not intend to parody or comment on Davis' original. *See id.* at 176.